# STATE OF CONNECTICUT *v.* LUIS NEFTALI FLORES
## (SC 18592)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan,
Eveleigh and Vertefeuille, Js.*

---

\* This appeal originally was argued before a panel consisting of Chief Justice Rogers and Justices Norcott, Katz, Palmer, McLachlan, Eveleigh and Vertefeuille. Thereafter, Justice Katz resigned from this court in January, 2011, and did not participate in the consideration or decision of this case. Justice Zarella was added to the panel and has read the record, briefs and transcript of oral argument.

Argued October 18, 2010—officially released May 24, 2011

*David J. Reich*, for the appellant (defendant).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Chris A. Pelosi*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Luis Neftali Flores, guilty of kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (B) and 53a-8 (a), robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8 (a), conspiracy to commit robbery in the first degree in violation of § 53a-134 (a) (4) and General Statutes § 53a-48 (a), burglary in the second degree in violation of General Statutes (Rev. to 2003) § 53a-102 (a) (2) and § 53a-8 (a), conspiracy to commit burglary in the second degree in violation of General Statutes (Rev. to 2003) § 53a-102 (a) (2) and § 53a-48 (a), and two counts of larceny in the third degree in violation of General Statutes (Rev. to 2003) § 53a-124 (a) (1) and § 53a-8 (a). The trial court rendered

judgment in accordance with the jury verdict and sentenced the defendant to a total effective sentence of sixteen years imprisonment. On appeal,[1] the defendant raises several claims of instructional impropriety. Specifically, the defendant claims that the trial court improperly failed (1) to instruct the jury on the intent and conduct necessary to find him guilty of kidnapping in accordance with *State* v. *Salamon*, 287 Conn. 509, 542, 550, 949 A.2d 1092 (2008), (2) to instruct the jury that, to commit the crimes of conspiracy to commit robbery in the first degree and conspiracy to commit burglary in the second degree, the defendant must have had the specific intent to commit the substantive crimes of robbery and burglary, respectively, (3) to specify which of two possible victims was the alleged victim of the robbery, (4) to specify which of the two larceny charges related to which of two stolen motor vehicles, and (5) to require a unanimous verdict on the charge of burglary in the second degree. We agree with the defendant's first claim but reject his remaining claims.[2] Accordingly, we reverse the trial court's judgment only with respect to the defendant's kidnapping conviction.

The jury reasonably could have found the following facts. At approximately 6 a.m. on August 13, 2004, the defendant, together with Luis Vega and Jorge Marrero, entered the apartment of Madeline Garay on Zion Street in the city of Hartford. All three men were dressed in dark clothing and wearing ski masks. Garay knew Vega

[1] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Because none of these remaining claims of instructional impropriety was raised in the trial court, the defendant seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), which governs our review of unpreserved constitutional claims. Although we agree with the defendant that the record is adequate for our review of the claims and that they implicate the defendant's constitutional right to a properly instructed jury, we conclude that they are not meritorious.

and Marrero from the neighborhood but did not socialize with them. The defendant and Garay, however, had known each other for many years, and Garay considered him to be a friend. After entering the apartment, the three men proceeded to the bedroom where Garay and her boyfriend, Carlos Ortiz, were sleeping. Garay's two children were asleep in another bedroom. The defendant awakened Garay by tapping her on the shoulder with a gun and whispering, "[where's] the money . . . ?" Garay, fearing for her life, responded in a loud voice that there was no money. The defendant then passed the gun to one of his accomplices and attempted to cover Garay's mouth with duct tape, but Garay immediately resisted. While the defendant was attempting to cover her mouth, Garay recognized the defendant's voice and a distinctive roll of fat on the back of his neck. She called out his name to see if it was him, and the defendant immediately responded and told her, "don't worry, we're not going to hurt you." He then turned to Vega and Marrero and said: "Fuck it. She . . . know[s] who we are." Immediately thereafter, the defendant, Vega and Marrero removed their masks. Garay testified that, when the defendant told her that he was not going to hurt her, she believed him because he used to be the boyfriend of her best friend's sister, and she had known him for many years.

The defendant then proceeded to search the room for valuables. While he was doing so, one of his accomplices pointed the gun between Garay and Ortiz and appeared to pull the trigger, although no bullets discharged.[3] At some point, Ortiz got up from the bed, hoping to escape through a window. When he attempted to lift the window shade, however, Vega asked him what he was doing. Vega then pointed the gun at Ortiz, demanded that he open his mouth, placed the gun inside

---

[3] It is not clear from the record whether Vega or Marrero wielded the gun on this occasion.

his mouth, told him to "calm down" and asked, "who's the man?" At the same time, Marrero came over and hit Ortiz on the head. Although Garay, who was on the bed the entire time, did not see Marrero hit Ortiz, she did see Vega put the gun inside Ortiz' mouth, at which point she told everyone to whisper so as not to wake her children.

The defendant, Vega and Marrero left the apartment as soon as they had finished searching the bedroom, taking with them Garay's two sets of car keys, the keys to her apartment, her jewelry, and her cell phone. Once outside, the defendant, Vega and Marrero drove away in Garay's two automobiles. The entire incident lasted between five and twenty minutes.[4] Later that morning, when Garay called her cell phone, Marrero answered it and told her where she could find one of the vehicles. Marrero also told her that he, the defendant and Vega had had no intention of hurting her that morning and that what they had done "had nothing to do with [her]." Additional facts and procedural history will be set forth as necessary.

I

We first address the defendant's claim that he is entitled to a new trial on the kidnapping charge because the trial court failed to instruct the jury in accordance with *State* v. *Salamon*, supra, 287 Conn. 509, in which we determined that a person cannot be convicted of the crime of kidnapping unless the jury finds beyond a reasonable doubt that the restraint or movement involved in the kidnapping was not merely incidental to the commission of another crime.[5] See id., 542. The

[4] Ortiz testified that the entire incident lasted "[b]etween five and eight minutes," whereas Garay testified that the incident lasted "maybe fifteen, twenty minutes, not even."

[5] We note that the trial in the present case predated the issuance of our decision in *Salamon* and, further, that the defendant's claim under *Salamon* is unpreserved. "Notwithstanding the defendant's failure to preserve this issue at trial, our interpretation of the kidnapping statutes in *Salamon* may

state does not dispute that the omission of a *Salamon* instruction was improper but contends that the impropriety was harmless because there is no reasonable possibility that the jury, even if instructed in accordance with *Salamon*, would have found that the force and restraint used in the commission of the robbery was merely incidental to that crime. We conclude that the impropriety was not harmless.[6]

"It is well established that a defect in a jury charge [that] raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . [T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (Citation omitted; internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 252, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). "An improper instruction on an element of an offense . . . is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *DeJesus*, 260 Conn. 466, 472–73, 797 A.2d 1101 (2002).

---

be applied to the present case because of the general rule that judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 454, 10 A.3d 942 (2011).

[6] The defendant raises two additional claims with respect to his kidnapping conviction, namely, that (1) § 53a-92 is unconstitutionally vague as applied to the facts of this case because the restraint or movement of Garay was no greater than that necessary to commit the underlying robbery, and (2) due to a scrivener's error, the information erroneously cited to General Statutes § 53a-92a, kidnapping in the first degree with a firearm, instead of § 52a-92, kidnapping in the first degree, thereby resulting in an improper jury instruction. We do not address the defendant's constitutional claim because we reverse his kidnapping conviction in accordance with *State* v. *Salamon*, supra, 287 Conn. 542, which bars such a conviction unless the evidence establishes that the defendant intended to prevent the victim's liberation for a longer period of time or to a greater degree than that necessary to commit the underlying offense. We do not consider the defendant's second claim because the issue is not likely to recur upon retrial.

"In *Salamon* . . . we . . . reconsidered and reversed our long-standing jurisprudence holding that the crime of kidnapping encompasses restraints that are necessary or incidental to the commission of a separate underlying crime . . . concluding that [o]ur legislature, in [enacting our kidnapping and unlawful restraint statutes], intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 288 Conn. 418, 429, 953 A.2d 45 (2008). Thus, we concluded that, "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State* v. *Salamon*, supra, 287 Conn. 542. Consequently, when, as in the present case, a defendant is charged with kidnapping in conjunction with another crime or crimes, "the jury must be instructed that, if it finds that the defendant's restraint of the victim was merely incidental to the defendant's commission of another crime against the victim . . . then it must find the defendant not guilty of the crime of kidnapping." Id., 550.

As we emphasized in *Salamon*, however, "a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. Conse-

quently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury." Id., 547–48. Moreover, "[f]or purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 548.

Because the state concedes that the defendant was entitled to a jury instruction in accordance with *Salamon*, we turn to the state's claim that the trial court's failure to give such an instruction was harmless beyond a reasonable doubt. Before doing so, however, it is important to note, first, that the kidnapping charge pertains to Garay only, and not to Ortiz. That is, the state charged the defendant with kidnapping Garay but did not charge him with kidnapping Ortiz.[7] Furthermore, the state does not contend that the defendant's restraint of Garay occurred for a greater period of time than was necessary to commit the robbery.[8] As we explain more fully hereinafter, the state's sole claim pertains to the amount of force that the defendant and his accomplices used to restrain Garay.

[7] The record does not reveal why the state charged the defendant with kidnapping Garay but not with kidnapping Ortiz.

[8] As we previously indicated, on the basis of the testimony that the state adduced, the jury reasonably could have concluded that the defendant and his accomplices were in Garay's apartment for no more than five minutes.

The state contends that the trial court's failure to instruct the jury in accordance with *Salamon* was harmless beyond a reasonable doubt because no jury reasonably could have found that the defendant intended to restrain Garay only to the extent necessary to commit the robbery. More specifically, the state asserts that "the degree of restraint imposed on Garay, directly and through the clear message sent to her as a result of the threatening conduct toward [Ortiz], exceeded what was necessary for the commission of the underlying robbery." With respect to the restraint imposed on Garay directly, the state relies primarily on testimony establishing that the defendant unsuccessfully sought to place duct tape over Garay's mouth. With respect to the restraint imposed on Garay indirectly, the state relies, first, on the conduct of one of the defendant's accomplices, who, during the commission of the robbery, pointed the gun between Garay and Ortiz and pulled the trigger, and, second, on the fact that the defendant's accomplices assaulted Ortiz after he tried to escape when Vega placed the gun in Ortiz' mouth and Marrero struck Ortiz on the head.[9] The state maintains that, even though much of this conduct was directed at Ortiz rather than Garay, it is reasonable to infer that it had the effect of restraining Garay by "convey[ing] a message of terror . . . about the potentially fatal consequence[s] of attempting to escape." In essence, therefore, the state claims that these acts of intimidation were so excessive that no jury reasonably could conclude that they were merely incidental to the commission of the robbery.

We acknowledge that a jury instructed as required by *Salamon* reasonably could find that the conduct of the defendant and his accomplices was not merely incidental to the robbery of Garay but, rather, involved

[9] According to Garay, however, she did not see anyone strike Ortiz on the head.

a degree of restraint, force and intimidation above and beyond that necessary to commit the robbery. Indeed, in view of the nature of that conduct, there exists a reasonable likelihood that a properly instructed jury, upon consideration of all of the relevant factors, *would* find the defendant guilty of kidnapping. The test for determining whether a trial court's constitutionally defective jury charge was harmless, however, is not whether a jury likely would return a guilty verdict if properly instructed; rather, the test is whether there is a reasonable possibility that a properly instructed jury would reach a different result. See, e.g., *State* v. *Hampton*, 293 Conn. 435, 462, 978 A.2d 1089 (2009). For purposes of the present case, therefore, we must decide whether there is a reasonable possibility that a jury, if instructed in accordance with *Salamon*, might find that the conduct of the defendant and his accomplices, although constituting an armed robbery, did not rise to the level of a kidnapping.

We are persuaded that a properly instructed jury reasonably could conclude that the restraint of Garay was incidental to the commission of the robbery. First, on the basis of the evidence adduced at trial, the jury reasonably could have found that Garay was neither bound nor moved physically during the commission of the robbery, that she was restrained on her bed for no more than five minutes while the defendant and his accomplices searched her room for valuables, and that she was released immediately after the robbery was complete. In light of the nature and extent of the restraint imposed on Garay's person, it would not appear that that restraint was sufficient, standing alone, to permit a finding that Garay had been kidnapped.

Furthermore, we do not agree with the state that the jury necessarily would have found that the degree of restraint imposed on Garay had independent criminal significance, separate and apart from the robbery.

Although the defendant tried to place duct tape over Garay's mouth, Garay effectively resisted. Shortly after the defendant entered Garay's apartment, Garay recognized the defendant, and, after she called out his name, he removed his mask and assured her that he and his accomplices would not hurt her. There is no doubt that Garay was frightened by the defendant and his accomplices, but, as we indicated, she testified that her fear was reduced substantially once she had identified the defendant.

In addition, much of the conduct on which the state relies in support of its claim that no jury reasonably could find that Garay had not been kidnapped was directed at Ortiz rather than Garay. Whether and to what extent Garay had been placed in fear because of the conduct directed toward Ortiz—at least some of which Garay did not witness personally—presents a question of fact for the jury.

Finally, in reaching our conclusion, we are mindful that the defendant's commission of the underlying crimes necessarily caused Garay a significant amount of fear. The defendant's conduct, which consisted of breaking into Garay's apartment in the early morning hours while she was sleeping and then wielding a gun during the commission of a robbery— conduct that provided the basis for the defendant's conviction of first degree robbery[10] and second degree

---

[10] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol . . . ."

General Statutes § 53a-133 provides in relevant part: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person . . . to engage in . . . conduct which aids in the commission of the larceny."

burglary[11]—undoubtedly caused Garay to be fearful. Because the crime of robbery necessarily entails the use or threatened use of immediate physical force, at what point the force used to commit the robbery becomes so excessive as to have independent criminal significance is a quintessential question of fact for determination by the jury.[12] In the present case, we cannot preclude the reasonable possibility that a jury could find that the degree of force or intimidation imposed on Garay was not greater than that necessary to commit the underlying robbery.[13]

---

[11] General Statutes (Rev. to 2003) § 53a-102 (a) provides in relevant part: "A person is guilty of burglary in the second degree when such person . . . (2) enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein."

[12] The state maintains that two cases in which the trial court's failure to instruct the jury in accordance with *Salamon* was deemed to be harmless beyond a reasonable doubt, namely, *State* v. *Hampton*, supra, 293 Conn. 435, and *State* v. *Nelson*, 118 Conn. App. 831, 986 A.2d 311, cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010), support its claim that the trial court's failure in the present case to instruct the jury in accordance with *Salamon* also was harmless. The state's contention lacks merit because the facts of *Hampton* and *Nelson* are entirely different from the facts of the present case.

In *Hampton*, we concluded that the instructional impropriety was harmless because the "state presented overwhelming evidence that the defendant [Travis Hampton, and his accomplice, James] Mitchell had kidnapped the victim and had driven around [the city of] Hartford and [the town of] East Hartford with her for well over three hours before [Hampton's] alleged commission of any other crimes commenced." *State* v. *Hampton*, supra, 293 Conn. 463. In *Nelson*, the Appellate Court concluded that the trial court's failure to give the jury an instruction in accordance with *Salamon* was harmless because "[t]he state presented overwhelming evidence that the defendant [Steve D. Nelson, after] repeatedly . . . assault[ing] the victim in his apartment . . . restrained him for several hours while transporting him to several locations in the city of Hartford and surrounding towns." *State* v. *Nelson*, supra, 118 Conn. App. 861. In contrast, the jury in the present case reasonably could have found that Garay was restrained for five minutes in her bedroom while the defendant and his accomplices sought to locate money or other valuables. It is apparent, therefore, that the present case bears no factual resemblance to *Hampton* or *Nelson*, and, consequently, neither of those two cases provides support for the state's claim.

[13] The state nevertheless urges us to create an exception to our holding in *Salamon* for restraints that occur during the course of a home invasion

## II

The defendant also claims that the trial court improperly failed to instruct the jury that, to establish that he committed the crimes of conspiracy to commit robbery in the first degree and conspiracy to commit burglary in the second degree, the state was required to prove that he had the specific intent to commit the substantive crimes of robbery and burglary, respectively. In support of this claim, the defendant contends that the trial court's reading to the jury of the entire statutory definition of intent set forth in General Statutes § 53a-3 (11),[14] which contains references both to intent to cause a result and intent to engage in conduct, improperly led the jury to believe that it could return a guilty verdict on the conspiracy counts upon a finding that the defendant

when "a defendant and his accomplices repeatedly terrorize [the] robbery victims . . . and specifically act to prevent one victim from escaping." In the state's view, such an exception is necessary to avoid "the bizarre and untenable result of [a jury's failure] to find a kidnapping separate and apart from the robbery" when the victims are "gratuitously terrorized during a home invasion . . . ." We are not persuaded that an exception of the kind that the state advocates is necessary. As we explained in *Salamon*, our holding in that case was "relatively narrow and directly affect[ed] only those cases in which the state [could not] establish that the restraint involved had independent significance as the predicate conduct for a kidnapping." *State v. Salamon*, supra, 287 Conn. 548. Thus, under *Salamon*, the jury is instructed that the defendant has committed a kidnapping, in addition to the underlying crime, if the jury finds that, "at any time prior to, during or after the commission of [the] other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime." Id., 547. The state does not claim that a properly instructed jury, having concluded that the coercive measures used to restrain the victims of a home invasion exceeded the degree of force necessary to complete the robbery, would not find the defendant guilty of kidnapping as well as robbery. Consequently, we see no reason to adopt an exception to *Salamon* for cases involving a factual scenario such as that presented by this case.

[14] General Statutes § 53a-3 provides in relevant part: "(11) A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

intended to engage in conduct that caused a result, rather than upon a finding that he possessed the specific intent to commit the crimes that were the subject of the conspiracies. We disagree.

The following additional procedural history is relevant to our disposition of this claim. As part of its general instructions to the jury, the trial court explained the definition of intent as follows: "Intent relates to the condition of mind of the person who commits the act, his purpose in doing it. Intentional conduct is purposeful conduct rather than conduct that is accidental or inadvertent." The court then read the statutory definition of intent set forth in § 53a-3 (11), stating: "As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct." Thereafter, when instructing the jury on the specific elements of conspiracy to commit robbery in the first degree, the court read the statutory definition of conspiracy set forth in § 53a-48: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." The court subsequently discussed each element of the crime, stating in relevant part: "The first element is that the defendant had the intent that conduct constituting a crime be performed. The defendant must be proven to have been actuated by criminal intent. It is not necessary, however, that the defendant intended to commit a crime. It is only necessary that he intended that certain conduct, which, if performed, would constitute a crime, robbery in the first degree, be performed or take place. With regard to this specific intent element you will recall, follow and apply my prior instructions on intent . . . .

"The second element is that the defendant, acting with that criminal intent, agreed with one or more persons to engage in or cause the performance of that conduct which constituted the crime of robbery in the first degree. . . .

"I have just instructed you on the elements of that crime, robbery in the first degree, in my prior instructions . . . . You will recall those instructions with regard to this second element of the separate crime of conspiracy charged in this count . . . . You will recall that I stated that the crime of robbery in the first degree, as defined in . . . § 53a-134 (a) (4), consists of the following elements:

"One, that there was a larceny, that is, a wrongful taking of property from an owner with the specific intent to deprive the owner or some other person of it, or to appropriate it to himself or to a third person; two, that the larceny was accomplished by the use of physical force, or its immediate threat, upon another person for the purpose of preventing or overcoming resistance to the taking of the property, making the larceny a robbery; and, three, that the defendant, or another participant in the crime, displayed or threatened the use of what he represented, by words or conduct, or both, to be a firearm."

The court then undertook a lengthy explanation of the second element of conspiracy to commit robbery, namely, that, there must be proof that the defendant, acting with criminal intent, agreed with one or more persons "to engage in or cause the performance of" conduct that constituted the crime of robbery in the first degree. In doing so, the court emphasized again that the jury could not find the defendant guilty of conspiracy to commit robbery in the first degree unless it found that he "had a guilty intent and knew that what he was doing was part of a general scheme to commit

robbery in the first degree." The court subsequently explained the intent requirement for conspiracy to commit second degree burglary using materially identical language. The jury thereafter found the defendant guilty of robbery in the first degree, conspiracy to commit robbery in the first degree, burglary in the second degree and conspiracy to commit burglary in the second degree.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Wallace*, 290 Conn. 261, 272–73, 962 A.2d 781 (2009).

Upon review of the trial court's instructions, we are persuaded that they adequately conveyed to the jury that, to find the defendant guilty of the crimes of conspiracy to commit first degree robbery and conspiracy to commit second degree burglary, it must find that he possessed the specific intent to commit the crimes that were the subject of the conspiracies, namely, robbery and burglary. Indeed, as we indicated, the trial court

repeatedly emphasized this point to the jury, explaining that the jury could not find the defendant guilty unless it found beyond a reasonable doubt that he "had a guilty intent and knew that what he was doing was part of a general scheme to commit robbery in the first degree," and that he participated in the conspiracy "acting with that criminal intent . . . ."

In support of his claim to the contrary, the defendant relies on the fact that the trial court, in its general instructions to the jury, improperly read the entire statutory definition of intent contained in § 53a-3 (11), including that portion of the statute that defines intent to perform conduct, which is inapplicable to the present case. The court later referred back to this definition when instructing the jury on the two conspiracy counts. The defendant contends that this instructional impropriety permitted the jury to find him guilty of conspiracy merely upon determining that he intended for certain conduct to be performed, regardless of whether he possessed the culpable intent necessary to render that conduct criminal. The defendant further contends that this impropriety was compounded when the trial court, in its charge on the conspiracy counts, failed to instruct the jury that conspiracy is a specific intent crime and, in fact, stated that it was "not necessary . . . that the defendant intended to commit a crime. It is only necessary that he intended that certain conduct, which, if performed, would constitute a crime . . . ."

"It is axiomatic that the definition of intent as provided in § 53a-3 (11) embraces both the specific intent to cause a result and the general intent to engage in proscribed conduct. It has become axiomatic, through decisional law, that it is improper for a court to refer in its instruction to the entire definitional language of § 53a-3 (11), including the intent to engage in conduct, when the charge relates to a crime requiring only the intent to cause a specific result." (Internal quotation

marks omitted.) *State* v. *Leggett*, 94 Conn. App. 392, 411, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006). Appellate courts have "noted, however, that in cases in which the entire definition of intent was improperly read to the jury, the conviction of the crime requiring specific intent almost always has been upheld because a proper intent instruction was also given." Id.; see, e.g., *State* v. *Austin*, 244 Conn. 226, 235–37, 710 A.2d 732 (1998) (no possibility that jury was misled with regard to specific intent element of crime even though trial court improperly read entire statutory definition of intent contained in § 53a-3 [11]); *State* v. *Prioleau*, 235 Conn. 274, 321–22, 664 A.2d 743 (1995) (same); *State* v. *McGee*, 124 Conn. App. 261, 267–71, 4 A.3d 837 (same), cert. denied, 299 Conn. 911, 10 A.3d 529 (2010), cert. denied sub nom. *McGee* v. *Connecticut*, 563 U.S. 945, 131 S. Ct. 2114, 179 L. Ed. 2d 908 (2011).

In the present case, as in the foregoing cases, the trial court explained that conspiracy is a specific intent crime and that the jury could not return a guilty verdict on the conspiracy counts unless it found that the defendant had intended to commit the crimes that were the subject of the conspiracies. Accordingly, notwithstanding the trial court's improper inclusion of the entire statutory definition of intent at the beginning of the jury charge, we are satisfied that the jury was not misled or confused as to the specific intent required for a finding of guilt on the conspiracy charges.[15]

---

[15] The defendant relies on *State* v. *DeBarros*, 58 Conn. App. 673, 678, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000), in which the trial court improperly read the entire statutory definition of intent when instructing the jury on the crimes of murder, attempt to commit murder and assault in the first degree with a firearm, to support his contention that the same instructional impropriety in the present case constitutes reversible error. *DeBarros* is readily distinguishable because, in contrast to the present case, the trial court in *DeBarros* read the statutory definition of intent without any explanation that those offenses are specific intent crimes. See id., 678–79, 683–84. As a consequence, in *DeBarros*, the Appellate Court concluded that it could not rule out the possibility "that the jury could have

We also do not agree with the defendant that the trial court's instruction that it was "not necessary . . . that the defendant intended to commit a crime . . . only . . . that he intended that certain conduct, which, if performed, would constitute a crime," reinforced the misimpression that the jury could find the defendant guilty of conspiracy merely upon determining that he intended to engage in certain conduct rather than to commit the crimes of robbery and burglary. Although we agree that this portion of the charge, when read in isolation, could confuse the jury in the manner that the defendant alleges, we do not review jury instructions in isolation; rather, our role is to examine them in the context of the entire charge to determine whether they provided adequate guidance to the jury with respect to the legal principles applicable to the particular case. See, e.g., *State* v. *Rodriguez-Roman*, 297 Conn. 66, 89, 3 A.3d 783 (2010). As the state maintains, the challenged portion of the conspiracy instruction, which essentially tracks the language of our conspiracy statute; see General Statutes § 53a-48 (a);[16] when viewed in the broader context of the court's entire charge on conspiracy, merely was intended to inform the jury that, to find the defendant guilty of conspiracy, it was not required to find that the defendant intended to commit the crimes of robbery and burglary *himself* or that it was necessary for the state to prove that the crimes of robbery and

understood that the state needed to prove beyond a reasonable doubt only that the defendant intended to engage in the conduct of firing a gun, rather than prove on the charges of murder and attempt to commit murder that he intended to cause the death of the [victims], [or] on the charge of assault in the first degree with a firearm that he intended to injure [one of the victims] seriously." Id. As we have explained, however, in the present case, there is no reasonable possibility that the trial court's instructions on the conspiracy charges, when viewed as whole, misled the jury.

[16] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

burglary had been completed. See *State* v. *Palangio*, 115 Conn. App. 355, 368–69, 973 A.2d 110 (rejecting claim that jury instruction identical in all material respects to instruction given in present case misled jury as to intent required to find defendant guilty of conspiracy charge), cert. denied, 293 Conn. 919, 979 A.2d 492 (2009); see also *State* v. *McGee*, supra, 124 Conn. App. 269–71 (rejecting claim that instruction tracking language of § 53a-48 [a] misled jury as to specific intent requirement of conspiracy); *State* v. *Morales*, 84 Conn. App. 283, 297–98, 300–301, 853 A.2d 532 (same), cert. denied, 271 Conn. 928, 859 A.2d 584 (2004). Rather, as the trial court explained, it was sufficient if the jury found that the defendant, acting with the intent that conduct constituting a crime was to be performed, agreed with one or more persons to engage in or cause the performance of such conduct, and that any one of the coconspirators committed an overt act in furtherance of that illegal agreement. For the foregoing reasons, the defendant cannot prevail on his claim of instructional impropriety with regard to his conviction of conspiracy to commit robbery in the first degree or conspiracy to commit burglary in the second degree.

### III

The defendant next claims that the trial court's instructions on the charge of robbery in the first degree were constitutionally defective because at no point in those instructions did the court relate the issues of law to the particular facts of the case. The defendant's claim is predicated on the trial court's failure to specify which of two possible victims, namely, Garay or Ortiz, was, in fact, alleged to be the victim of the robbery. According to the defendant, this instructional omission likely misled the jury because, although the evidence supported a finding that both Garay *and* Ortiz were the victims of the robbery, the information charged the

defendant with a single count of robbery of "another person . . . ."

The following facts and procedural history are relevant to our resolution of this claim. As we previously discussed, the state's evidence established that the defendant and his accomplices invaded Garay's apartment, threatened both Garay and Ortiz with a gun in order to restrain them while they searched Garay's bedroom for valuables, and then took Garay's jewelry, the keys to her apartment and her two automobiles, and Garay's cell phone. With respect to the robbery charge, the trial court instructed the jury in relevant part that "[a] person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force [on] another person for the purpose of preventing or overcoming resistance to the taking of the property." The court did not indicate whether the "person" alleged to have been the victim of the robbery was Garay, Ortiz or both.

It is well established that, "[i]n properly instructing the jury it may or may not be necessary for the court to recall the attention of the jury to the evidence and to the facts [that] the [s]tate and the accused respectively claim to have established, or to comment [on] the evidence or [to] express an opinion as to its weight, or as to what verdict would be proper if the jury should find certain facts to have been proved. . . .

"In reviewing whether the trial court must comment on any evidence that has been presented, we examine not only the entire jury charge . . . but also the presentation of the issues to the jury by counsel in the context of the trial. Within constitutional limitations concerning trial by jury, the nature and extent of the trial court's comments on the evidence must largely depend on the facts involved in a particular case and the manner in which it has been tried." (Citation omitted; internal

quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 510–11, 659 A.2d 1194 (1995). "The primary purpose of the charge is to assist the jury in applying the law correctly to the facts [that] they might find to be established. . . . The extent to which a court should comment on the evidence is largely a matter within its sound discretion. . . . In some cases, where the issues are complicated, peculiar, or capable of differing conclusions, comment by the court is necessary. On the other hand, if the issues are clearly enumerated and the argument of counsel has fairly presented the case, a discussion in the charge of the details of the evidence may defeat its proper purpose." (Citations omitted; internal quotation marks omitted.) Id., 515.

Applying these principles to the instructions in the present case, we conclude that that there is no possibility that the jury was misled by the trial court's failure to specify whether Garay or Ortiz was the victim of the robbery. This is so because, when a robbery involves multiple victims, the state properly may charge a defendant with a separate count of robbery for each of the victims, or with a single count of robbery for all the victims. See *State* v. *Kyles*, 221 Conn. 643, 650–51, 607 A.2d 355 (1992); cf. *State* v. *Lytell*, 206 Conn. 657, 665–67, 539 A.2d 133 (1988). If, as in the present case, the state elects to charge the defendant with a single count of robbery involving multiple victims, "the state [is] . . . required to prove [only] that one person was robbed . . . ." *State* v. *Kyles*, supra, 651; cf. *State* v. *Ingram*, 43 Conn. App. 801, 818–20, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997). Consequently, the jury reasonably could find the defendant guilty if it determined that he had robbed *either* Garay *or* Ortiz. The defendant's claim therefore must fail.

## IV

The defendant further claims that the trial court's instructions on the two larceny charges were constitutionally defective because the court failed to specify which count related to which of two stolen vehicles. Specifically, the defendant claims that, because the two larcenies are charged in identical language, the trial court's failure to specify which count related to which vehicle may have improperly led the jury to believe that it could consider the two counts together.

As we previously indicated, the evidence revealed that the defendant and his accomplices stole, among other items, Garay's cell phone and two sets of car keys and, upon leaving her apartment, drove away in her two automobiles, a Buick Riviera and a Buick LeSabre. Later that day, Garay called her cell phone, and Marrero told her where she could find the Buick LeSabre. The defendant subsequently was charged with two counts of larceny in the third degree. In each count, the defendant was charged with the theft of a single automobile valued at $5000 or less. Additionally, in instructing the jury on the larceny charges, the trial court stated that "[e]ach count concerns larcenous conduct involving motor vehicles: the black 1995 Buick Riviera and the red 1997 Buick LeSabre. . . . I shall not repeat my charge twice on larceny in the third degree . . . but you are to understand that the instructions . . . on the elements of larceny in the third degree . . . apply to both of these counts . . . . However, I specifically instruct you that, notwithstanding the aforesaid, you must, I repeat, you must, in reaching your separate verdict on each count, consider each of these counts separately, distinctly and independently of the other."

In light of the trial court's emphatic and straightforward instruction that the jury was required to treat the two larceny counts separately, there is no risk that

the jury nevertheless considered the counts together. Although the trial court did not specify which count related to which vehicle, the court made it clear that each count related to one of the two stolen vehicles. The jury also was provided with a copy of the information, which clearly indicates that each larceny count corresponds to the theft of a single automobile. In light of the foregoing, the defendant cannot prevail on his claim of instructional impropriety with respect to the larceny charges.[17]

## V

Finally, we address the defendant's claim that the trial court improperly failed to instruct the jury that, to find him guilty of burglary in the second degree, it

---

[17] The defendant asserts that *State* v. *Wolff*, 29 Conn. App. 524, 616 A.2d 1143 (1992), supports his claim that the trial court's failure to specify which larceny count related to which vehicle could have caused the jury reasonably to believe that it was entitled to consider the two counts together. In *Wolff*, the defendant, Scott Brian Wolff, was convicted of two counts of assault in the third degree and two counts of unlawful restraint in the third degree in connection with an incident in which he allegedly assaulted and unlawfully restrained both of his parents, for approximately one hour, in their home. Id., 525–26. On appeal, Wolff claimed that the trial court's instructions were constitutionally defective, in part because the court had failed to inform the jury that all of the charges did not relate to a single victim. See id., 529. The Appellate Court agreed with Wolff and reversed the judgment of conviction. Id., 532–33. *Wolff* is inapposite to the present case, however, because, as the Appellate Court explained, "[t]he issues in [that] case were complicated, peculiar, and capable of differing constructions [in view of the fact that] the case involved two separate victims and similar crimes." Id., 532. As a consequence, in *Wolff*, the trial court's failure to instruct the jury (1) as to which count of the information applied to which victim, (2) that the jury must consider each of the counts separately, and (3) that the verdict that it reached on any one count did not control the verdict that it might reach on any other count, was not harmless beyond a reasonable doubt because of the likelihood of a guilty finding on all four counts solely on the basis of Wolff's actions against any *one* of the victims. See id. Under the facts of the present case, however, and in light of the trial court's instruction directing the jury to consider each of the two larceny counts as involving the theft of one of the two vehicles, the jury could not possibly have been confused, as the defendant claims.

must unanimously agree about which underlying crime he intended to commit when he unlawfully entered Garay's apartment. Specifically, he contends that the trial court's instruction that the jury could find him guilty of burglary in the second degree if it concluded that "he . . . intended to commit a crime in that apartment, either the crime of robbery, the crime of larceny, or both," improperly authorized a nonunanimous verdict on that charge. We agree with the state that, even if it is assumed, arguendo, that the trial court should have instructed the jury in the manner that the defendant alleges, the court's failure to do so could not have possibly harmed the defendant because the jury unanimously found the defendant guilty of both robbery in the first degree and larceny in the third degree. In view of the fact that those findings pertain to the same robbery and the same larceny that are alleged in the burglary count, the jury's finding of guilt with respect to the burglary count necessarily reflects its unanimous determination that the defendant entered Garay's apartment intending to commit both robbery and larceny. Consequently, any possible shortcoming in the trial court's charge necessarily was harmless.

The judgment is reversed only as to the defendant's conviction on the kidnapping charge and the case is remanded for a new trial on that charge; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.