******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* LUIS NEFTALI FLORES
### (AC 34703)

Lavine, Robinson and Borden, Js.*

*Argued October 15, 2013—officially released February 4, 2014*

(Appeal from Superior Court, judicial district of Hartford, Hon. John F. Mulcahy, Jr., judge trial referee [criminal judgment]; Dewey, J. [motion to correct].)

*Katharine S. Goodbody*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Chris Pelosi*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Luis Neftali Flores, appeals from the judgment of the trial court denying his motion to correct an illegal sentence, filed pursuant to Practice Book § 43-22.[1] The defendant claims that he is entitled to a new sentencing procedure because: (1) his sentence was based on inaccurate information; (2) his sentence was imposed in an illegal manner; and (3) it is appropriate in the present case to apply the aggregate package doctrine to his sentence. Because we conclude that the present case is controlled by this court's decision in *State* v. *Martin M.*, 143 Conn. App. 140, 141–50, 70 A.3d 135, cert. denied, 309 Conn. 919, 70 A.3d 41 (2013), we reject the defendant's claims and, accordingly, affirm the judgment.

The self-represented defendant filed a motion to correct an illegal sentence. The court, *Dewey, J.*, denied the motion. This appeal followed.

The following procedural history is pertinent to the present case. Pursuant to a jury trial, the defendant was convicted and sentenced on seven charges set forth in a long form information. The trial court, *Hon. John F. Mulcahy, Jr.*, judge trial referee, imposed the following sentences: on count one, robbery in the first degree, sixteen years of incarceration; on count two, conspiracy to commit robbery in the first degree, sixteen years of incarceration; on count three, burglary in the second degree, ten years of incarceration; on count four, conspiracy to commit burglary in the second degree, ten years of incarceration; on count five, kidnapping in the first degree, sixteen years of incarceration; and on counts six and seven, larceny in the third degree, three years of incarceration on each count. The court ordered all of the sentences to run concurrently, for a total effective sentence of sixteen years of incarceration. Subsequently, the court vacated the sentence on count four and ordered that count merged with the conviction on count two, but did not change the total effective sentence of sixteen years of incarceration.

The facts of the case, as stated by the Supreme Court in the defendant's direct appeal, are as follows: "At approximately 6 a.m. on August 13, 2004, the defendant, together with Luis Vega and Jorge Marrero, entered the apartment of Madeline Garay on Zion Street in the city of Hartford. All three men were dressed in dark clothing and wearing ski masks. Garay knew Vega and Marrero from the neighborhood but did not socialize with them. The defendant and Garay, however, had known each other for many years, and Garay considered him to be a friend. After entering the apartment, the three men proceeded to the bedroom where Garay and her boyfriend, Carlos Ortiz, were sleeping. Garay's two children were asleep in another bedroom. The defendant awakened Garay by tapping her on the shoulder with a gun

and whispering, '[where's] the money . . . ?' Garay, fearing for her life, responded in a loud voice that there was no money. The defendant then passed the gun to one of his accomplices and attempted to cover Garay's mouth with duct tape, but Garay immediately resisted. While the defendant was attempting to cover her mouth, Garay recognized the defendant's voice and a distinctive roll of fat on the back of his neck. She called out his name to see if it was him, and the defendant immediately responded and told her, 'don't worry, we're not going to hurt you.' He then turned to Vega and Marrero and said: 'Fuck it. She . . . know[s] who we are.' Immediately thereafter, the defendant, Vega and Marrero removed their masks. Garay testified that, when the defendant told her that he was not going to hurt her, she believed him because he used to be the boyfriend of her best friend's sister, and she had known him for many years.

"The defendant then proceeded to search the room for valuables. While he was doing so, one of his accomplices pointed the gun between Garay and Ortiz and appeared to pull the trigger, although no bullets discharged. At some point, Ortiz got up from the bed, hoping to escape through a window. When he attempted to lift the window shade, however, Vega asked him what he was doing. Vega then pointed the gun at Ortiz, demanded that he open his mouth, placed the gun inside his mouth, told him to 'calm down' and asked, 'who's the man?' At the same time, Marrero came over and hit Ortiz on the head. Although Garay, who was on the bed the entire time, did not see Marrero hit Ortiz, she did see Vega put the gun inside Ortiz' mouth, at which point she told everyone to whisper so as not to wake her children.

"The defendant, Vega and Marrero left the apartment as soon as they had finished searching the bedroom, taking with them Garay's two sets of car keys, the keys to her apartment, her jewelry, and her cell phone. Once outside, the defendant, Vega and Marrero drove away in Garay's two automobiles. The entire incident lasted between five and twenty minutes. Later that morning, when Garay called her cell phone, Marrero answered it and told her where she could find one of the vehicles. Marrero also told her that he, the defendant and Vega had had no intention of hurting her that morning and that what they had done 'had nothing to do with [her].' " (Footnotes omitted.) *State* v. *Flores*, 301 Conn. 77, 80–82, 17 A.3d 1025 (2011).

The Supreme Court affirmed the judgment of conviction, except as to count five, kidnapping in the first degree. Id., 102. As to that count, the court, pursuant to its decisions in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), and *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008), superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 579, 969

A.2d 710 (2009), held that the defendant was entitled to a new trial because the trial court failed to instruct the jury in accordance with *Salamon* that, in order to find the defendant guilty of kidnapping, it must find that the restraint or movement involved in the kidnapping was not merely incidental to one of the other crimes, and that this impropriety resulted in harmful error. *State* v. *Flores*, supra, 301 Conn. 82–89. Thereafter, the state nolled the kidnapping charge, and Judge Dewey dismissed the charge at the defendant's request. These proceedings followed.

The defendant raises three closely related claims, namely, that his sentence was illegal and he must be resentenced because: (1) the trial court relied on inaccurate information; (2) even if the trial court did not rely on inaccurate information, his sentence was imposed in an illegal manner; and (3) it is appropriate to apply the aggregate package doctrine in resentencing the defendant. The first claim rests on the factual premise that Judge Mulcahy relied on the fact that the defendant had been convicted of kidnapping at the time of sentencing, but that that conviction was subsequently vacated by the Supreme Court and the charge dismissed by Judge Dewey. The second claim rests on the legal premise that "a sentence imposed at a time when the defendant had been convicted of seven counts, was imposed in an illegal manner when the defendant subsequently stands convicted of only five counts." The third claim, which flows from the first two, is that "the aggregate package theory dictates that the sentence in a multicount conviction be vacated and the defendant be resentenced after one or more counts of a multicount conviction are set aside." We disagree.

In *State* v. *Martin M.*, supra, 143 Conn. App. 140, the defendant moved to correct an illegal sentence pursuant to Practice Book § 43-22 on the ground that his sentence had been imposed in an illegal manner, in part because his kidnapping conviction was subsequently reversed on appeal. Id., 141–42. The trial court denied his motion, and this court affirmed the judgment. Id., 143–50. The facts and procedural history of *Martin M.* are strikingly similar to those in the present case.

In *Martin M.*, the defendant was convicted of two counts of risk of injury to a child, one count of sexual assault in the first degree, and one count of kidnapping in the first degree. Id., 142. The court, *Prescott, J.*, imposed sentence as follows: twenty years of incarceration for sexual assault in the first degree; twenty years of incarceration for kidnapping in the first degree; and ten years of incarceration for each count of risk of injury to a child. The terms of incarceration for the sexual assault and kidnapping were to be served concurrently with each other, and the terms for the two counts of risk of injury were to run concurrently with each other but consecutively to the terms for sexual

assault and kidnapping, for a total effective sentence of thirty years imprisonment. Id.

On direct appeal, this court, on the basis of *State* v. *DeJesus*, supra, 288 Conn. 418, reversed the kidnapping conviction and ordered a new trial on that count. *State* v. *Martin M.*, supra, 143 Conn. App. 142–43. After the remand, the state nolled the kidnapping charge, and the defendant in *Martin M.* subsequently moved to correct an illegal sentence, which the trial court, *Damiani, J.*, denied. Id., 143.

In his subsequent appeal from the denial of his motion to correct an illegal sentence, the defendant in *Martin M.* raised three claims: (1) the sentence was imposed in an illegal manner because Judge Prescott had relied on inaccurate information in imposing the sentence, namely, the conviction of kidnapping that was subsequently reversed; (2) *State* v. *Raucci*, 21 Conn. App. 557, 563, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990), required a resentencing hearing; and (3) the defendant was entitled to a new sentencing hearing pursuant to the aggregate package doctrine. *State* v. *Martin M.*, supra, 143 Conn. App. 147–49. This court rejected each claim.

With respect to the defendant's first claim in *Martin M.*, this court concluded that "the record does not reflect that Judge Prescott relied on the reversed conviction of kidnapping when sentencing the defendant." Id., 147. This court stated: "The sentence imposed for kidnapping was to be served concurrently with the sentence imposed for sexual assault, giving the sentence imposed for kidnapping essentially no punitive effect. After conducting a careful review of the sentencing hearing, it is clear that Judge Prescott focused on the sex offenses and considered the danger the defendant posed as a recidivist sex offender—the kidnapping conviction was incidental. . . . Judge Prescott mentioned the kidnapping count only in rote recitation and never discussed any of its particulars. . . . Aside from a brief colloquy discussing the relevant penalties in the presentence investigation report and a brief mention in the state's summation, the arguments presented at the hearing did not involve the kidnapping conviction. Rather, the arguments concerned the sexual offenses; prior misconduct, including other sex offenses, domestic violence, burglary and violation of a protective order; and the effect of the assaults on the victim and the interests of the victim. The defendant has not shown that Judge Prescott relied on the kidnapping conviction in imposing sentence." (Citations omitted.) Id., 147–48.

With respect to the reliance by the defendant in *Martin M.* on *State* v. *Raucci*, supra, 21 Conn. App. 557, as mandating a resentencing, this court distinguished *Raucci* on the ground that the sentence vacated therein was consecutive to the sentences imposed on all of the other counts. *State* v. *Martin M.*, supra, 143 Conn. App.

149. In addition, in *Raucci*, the record showed that the sentencing court depended on the vacated conviction in arriving at the overall effective sentence. *State* v. *Raucci*, supra, 559. Thus, unlike Judge Prescott in *Martin M.*, the court in *Raucci* did rely on the sentence imposed on the vacated conviction in imposing the total effective sentence. *State* v. *Martin M.*, supra, 149.

Finally, this court in *Martin M.* rejected the defendant's claim that the aggregate package doctrine entitled him to a new sentencing hearing for two reasons. First, "the doctrine concerns review of a *revised* sentence; it does not apply to the present appeal, which concerns whether an *original* sentence was imposed in an illegal manner." (Emphasis in original.) Id. Second, the doctrine does not "[obviate] the requirement that there must be a showing of *reliance* on misinformation for a court to have jurisdiction to modify a sentence." (Emphasis in original.) Id., 149–50.

With this background in mind, we now return to the defendant's claims in the present case. The first claim is that, in sentencing the defendant, the court relied on the fact that he had been convicted of kidnapping, which conviction was subsequently reversed by the Supreme Court, and which count was subsequently dismissed by Judge Dewey. This claim fails for the same reason its counterpart failed in *Martin M.*, namely, that it is clear from the record that Judge Mulcahy did not rely on the kidnapping conviction in imposing the original sentence.

All of the sentences imposed, including the sentence for kidnapping, ran concurrently, for an effective sentence of sixteen years of incarceration. That concurrent sixteen year sentence was equal to the sentences imposed for the conviction of robbery and conspiracy to commit robbery. There were no consecutive sentences imposed. In addition, in its sentencing remarks, the court referred to the purposes of sentencing, namely, the protection of society, deterrence, and punishment "for engaging in . . . felonious activity of a very serious nature." Additionally, the court referred to the defendant's extensive criminal record, and to the seriousness of the defendant's conduct, namely, intruding in the early morning hours into a residence where two young children were sleeping, using duct tape on the victim and demanding money, and using a gun, all of which constituted "very, very serious, truly criminal conduct, posing a great risk to other persons . . . [and] a great danger . . . to children." Thus, the court concluded, "a significant sentence" was appropriate. As the state aptly points out, the court never even mentioned the kidnapping conviction in its sentencing remarks, except when referencing the conviction on the fifth count of the information.

In his second claim, the defendant asserts that his sentence was imposed in an illegal manner because it

was imposed when he had been convicted of seven counts, whereas he now stands convicted of only five counts. In this respect, the defendant, like the defendant in *Martin M.*, relies principally on *Raucci*. Again, this claim fails for the same reason that its counterpart in *Martin M.* failed, namely, that, unlike the situation in *Raucci*, the sentencing court did not rely on the kidnapping conviction that was subsequently reversed, and the court made clear in its sentencing remarks that it did not rely on that conviction in imposing its overall sentence of sixteen years imprisonment.

Finally, the defendant's third claim, resting on the aggregate package doctrine, fails for the same reasons that a similar claim failed in *Martin M.* That doctrine does not apply to the present case, which involves whether an original sentence was imposed in an illegal manner—not a revised sentence as the doctrine requires; and there is nothing in that doctrine that obviates the requirement that there must be a showing of reliance on misinformation for a court to modify a sentence. We conclude, therefore, that Judge Dewey properly denied the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." Practice Book § 43-22.