# STATE OF CONNECTICUT *v.* RICARDO MACK
## (AC 32584)

Beach, Alvord and Schaller, Js.

March 22—officially released May 31, 2011

*William B. Westcott*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *John F. Fahey*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Ricardo Mack, appeals from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a (a) and two counts of assault in the first degree with a firearm in violation of General Statutes § 53a-59 (a) (5).[1] On appeal, the defendant claims it was improper for the court to admit handwritten notes discovered in another inmate's cell as evidence of the defendant's consciousness of guilt on the grounds that (1) the evidence was irrelevant and (2) its admission violated his federal constitutional rights.[2] We affirm the judgment of the trial court.

---

[1] The court imposed a total effective sentence of ninety years imprisonment.

[2] The defendant also asks this court to exercise its supervisory authority to abandon, or strictly limit, the doctrine of consciousness of guilt under our law. Our Supreme Court has declined such invitations; see, e.g., *State* v. *Coward*, 292 Conn. 296, 316, 972 A.2d 691 (2009); and we, as an intermediate appellate court, are bound by such decisions. *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). Accordingly, we decline to do so.

The jury reasonably could have found the following facts. A shooting resulting in the death of Chaz Booth and gunshot injuries to two other persons, Terrice Kimble and Christopher Henry, occurred in the early morning hours of December 24, 2005, in Hartford. Booth, Kimble, Henry and the defendant were among a crowd of people in Papa's Pizza, which is a restaurant on Union Place in Hartford. Booth was sitting at a table near the front of the restaurant on the right side when, at approximately 2:42 a.m., the defendant raised his arm and fired several gunshots from a handgun. The defendant then moved forward, closer to Booth, and fired additional gunshots before running out the door.[3] Ten cartridge cases were recovered from the restaurant. Booth died from a total of seven gunshot wounds, with bullet trajectories indicating that the bullets entered him from the back.

When the gunshots were fired, Kimble jumped on top of a table to make his way out of the restaurant. Once he was outside, he discovered that he had been shot and had suffered wounds to his arm and torso. Henry was sitting at the table opposite from where Booth was sitting. When the gunshots were fired, Henry dropped to the floor and hid under the table. He discovered that he had been shot in the leg, so he "scooted" out of the restaurant without getting up from the floor.

The defendant fled the restaurant in a red Jeep Cherokee driven by another person. A Hartford police officer responded to a report of gunshots being fired at the restaurant and learned that a red Jeep Cherokee had left the scene. On his way to the restaurant, the officer came upon a motor vehicle accident involving a red Jeep Cherokee. When the officer approached, the defendant

---

[3] The restaurant had a security system, which recorded a silent video from four small cameras inside. Police seized the video, which showed the shooter and the shooting, but not the victim. The video was admitted as a full exhibit at trial, and portions of the recording were shown to the jury.

fled from the vehicle on foot. The officer apprehended the defendant, arrested him and brought him to the police station. The police recovered the handgun used in the shooting from the vehicle.

The defendant made a statement to the police in which he confessed to the shooting.[4] He stated that he believed that Booth had shot and killed his friend Marlon Atkinson, also known as "Pints," in 2004. The defendant shot Booth at the restaurant in retaliation for Atkinson's murder.

At trial, counsel for the defendant argued that the defendant had acted in self-defense. Two witnesses testified in support of this defense. Jaquan Leggett testified that the defendant was in a heated conversation with someone at the restaurant just prior to the shooting, and that he saw a man consistent with Booth's description with a gun in his hand. Floyd Riley testified that, sometime before the shooting, the defendant had told him that Booth had threatened him. The defendant did not mention any of these facts in his signed confession. Both surviving victims of the shooting, Kimble and Henry, testified that they did not recall seeing Booth with a gun, nor did they recall hearing any argument between the defendant and Booth.

At trial, the state presented evidence relating to the defendant's consciousness of guilt. Specifically, it pointed to the defendant's flight from the restaurant, the defendant's flight from the red Jeep Cherokee following the collision and the arrival of the police, and the alleged effort of the defendant, in the form of certain notes seized from the cell of an inmate named Marcus Perry, to solicit testimony concerning his claim of self-defense.

---

[4] The court found that the defendant had been advised properly of his rights and had knowingly, intelligently and voluntarily waived them. The defendant does not claim in this appeal any impropriety with the court's admitting this confession into evidence.

Regarding the notes, the following facts are relevant. In March, 2008, shortly before the defendant's trial, officers from the department of correction searched the cell belonging to Perry. They found two handwritten notes. The jury reasonably could have found that the first note asked Perry to testify that he was at the restaurant and witnessed the events that transpired, including that Perry saw Booth shoot first and that he and another witness saw one of Booth's "boys" take his gun from him.[5] See footnote 5 of this opinion. The second handwritten note consisted of two lists, titled "what I had on" and "what he had on," and descriptions of clothing consistent with what the defendant and Booth were wearing at the restaurant that night.

On occasions over the course of the defendant's incarceration, his cell also was searched for contraband, and certain letters or notes had been seized and kept by the department of correction, as was done for each inmate. One of the officers who searched Perry's cell believed that he recognized the handwriting on the two notes found as the defendant's, so the notes were

[5] The first note found in Perry's cell stated: "M-1 what's popin my boy yeah, it's crunch time my nigga your boy is good but all I need for you to do is let these people no thay you came from the Hot Club on bartholomew St in Hartford then you went to papa's ordered your food you and mo-b and sat at the window next to the front but you was siting on the same side where the kid was at and then you saw me and him talking you seen talking shit to me then you seen him pull out first and shot at me first then you had fell to the floor after the shot's was fired you and mo-b saw one of his boys take the gun from him it was a black gun you dident see who it was but you saw him take the gun from him then yall left then you saw the shit on the news then you came to jail and found out who I was and you told me that you was at papa's and you told me what you saw, and you told me that you would help because he tried to kill me. Feel me that's it and yo I respect you for real it's only right we get up out there the true story but yo just go over this till they call you they will call you real soon write mo-b and just let him no it's time and be ready feel me but yo holla me and be easy over there my nigga for real. One. you no who it is" The note was signed "One" in larger letters, with the phrase "you [know] who it is" printed underneath.

compared with "known" samples of his writing from letters seized from the defendant's cell on prior occasions. The notes and "known" exemplars of the defendant's handwriting were admitted as full exhibits at trial. Additional facts will be set forth as necessary.

On appeal, the defendant makes a number of claims concerning the court's admission of the notes seized from Perry's cell. These claims fairly can be summarized as follows: (1) the notes were not relevant; and (2) the admission of the notes was fundamentally unfair and deprived him of certain constitutional rights.

## I

The defendant claims that the court abused its discretion by admitting the notes found in Perry's cell because they were not relevant. Specifically, he claims that they were not probative of the defendant's consciousness of guilt. He also appears to argue that because the notes and "known" exemplars of his handwriting contained inflammatory language that was more prejudicial than probative, the court should not have admitted them on relevance grounds. We are not persuaded.

We note that the state argues that these claims are unreviewable because, although the defendant's counsel objected to the admission of the notes on relevance grounds at trial, his counsel conceded at trial that the jury could find that the notes related to the allegations in this case. Although counsel made such a concession, he argued against admitting the letters on relevance grounds, maintaining that they were more prejudicial than they were probative. Based on our thorough review of the record, we will review the defendant's evidentiary claims because they properly were preserved.[6]

---

[6] We decline, therefore, to review the defendant's claim that the court committed plain error by admitting the challenged evidence. "The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judg-

We begin by setting forth our standard of review and the principles that guide our analysis. "The trial court's ruling on the admissibility of evidence is entitled to great deference . . . [and] will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Zillo*, 124 Conn. App. 690, 695, 5 A.3d 996 (2010).

"Within the law of evidence, relevance is a very broad concept. Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact *even to a slight degree*, [as] long as it is not prejudicial or merely cumulative." (Emphasis added; internal quotation marks omitted.) *State* v. *Collins*, 299 Conn. 567, 587 n.19, 10 A.3d 1005 (2011).

## A

The defendant first argues that the notes were not probative of his consciousness of guilt. He argues that the notes established nothing more than that he may have been discussing his case with a potential eyewitness, prompting the witness' recollection, not that he was soliciting false testimony. He argues that, because there was no evidence of money, threats, or other bases to believe that he "[put] Perry up to" testifying on his

ment, for reasons of policy." (Internal quotation marks omitted.) *State* v. *Christopher E.*, 126 Conn. App. 815, 825, 12 A.3d 1072, cert. denied, 300 Conn. 936, 17 A.3d 473 (2011).

behalf, there was nothing present in the notes or the surrounding circumstances to "make out a prima facie basis for an inference" of consciousness of guilt. We disagree.

A discussion of consciousness of guilt evidence is helpful. "Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, is ordinarily the basis for a [jury] charge on the inference of consciousness of guilt." *State* v. *Oliveras*, 210 Conn. 751, 759, 557 A.2d 534 (1989). "[C]onsciousness of guilt [evidence] goes to the question of the defendant's state of mind, a determination which in turn requires an assessment of the defendant's motivations . . . . In seeking to introduce evidence of a defendant's consciousness of guilt, [i]t is relevant to show the conduct of an accused . . . as well as any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act." (Internal quotation marks omitted.) *State* v. *Davis*, 98 Conn. App. 608, 628, 911 A.2d 753 (2006), aff'd, 286 Conn. 17, 942 A.2d 373 (2008).

"The fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible." *State* v. *Reid*, 193 Conn. 646, 656 n.12, 480 A.2d 463 (1984). Attempts to suborn perjury on the defendant's behalf have been held to warrant a jury instruction on consciousness of guilt. *State* v. *Coltherst*, 263 Conn. 478, 503–507, 820 A.2d 1024 (2003) (letter offering to pay for alibi); *State* v. *Reid*, supra, 656 (statement " 'get the three witnesses lined up' " relevant to show attempt to fabricate alibi).

In the present case, the defendant challenges whether the notes seized from Perry's cell were probative of

his consciousness of guilt. Together, the notes contain details about the events that occurred in the restaurant on the morning of the shooting. The notes, which were found shortly before the defendant's trial was to begin, indicate that it was "crunch time" and that Perry would be called "real soon . . . ." See footnote 5 of this opinion. Notably, the defendant does not argue that the notes were in any way ambiguous insofar as they related to the events at issue in the trial. Nor does he argue on appeal that it was in any way possible for the jury to believe that he was not the author of the notes. Rather, he argues that he was merely preparing a fact witness for trial, in much the same way that an attorney would prepare a witness for trial: by going through the details of Perry's recollection.

The defendant's suggested interpretation of the notes is not the only reasonable interpretation, however. The notes reasonably may be construed in such a manner that it would appear that the defendant was asking Perry to testify falsely concerning the defendant's claim of self-defense. See footnote 5 of this opinion. The defendant disguised his identity by signing one note "you [know] who it is." The alleged facts contained in the first note supported the defendant's claim of self-defense: Perry saw Booth "talking shit" to the defendant; Perry saw Booth pull out a gun first; Perry and another person saw one of Booth's "boys" take the gun from him. The first note contained details as to how Perry purportedly came to know about the defendant's plight and implored Perry to "just go over this till they call you . . . ." The second note contained details as to what the defendant and Booth were wearing. The jury reasonably could construe these statements to mean that Perry was not, in fact, at the restaurant that night, and, thus, had no personal knowledge of what the parties were wearing, or that he was at the restaurant, but he did not actually observe the details to which the defendant wanted him to testify.

It is not for the reviewing court to determine whether the defendant's or the state's interpretation of the notes is correct. That there is a claimed ambiguity goes to the weight that the jury should afford the evidence, not to its admissibility. There is a reasonable view of the evidence that would support an inference that the defendant wrote the notes because he wanted to bolster his claim of self-defense with Perry's false testimony. This view is probative of the defendant's consciousness of guilt. Accordingly, we conclude that the notes were relevant.

## B

Relevant evidence may be excluded, however, if its prejudicial effect outweighs its probative force. On appeal, the defendant also appears to argue that because the notes and certain "known" exemplars of his handwriting contained inflammatory language that was prejudicial, the court should not have admitted them on relevance grounds.

The following additional procedural history is necessary to understand this claim and the defendant's remaining claims. At trial, the state solicited testimony of a correction officer and a handwriting expert regarding six "known" samples of the defendant's handwriting. Small exemplars taken from the "known" samples were shown to the jury to provide a basis of comparison in order for the state to establish the defendant's authorship of the two notes found in Perry's cell. Outside of the jury's presence, there was an evidentiary dispute regarding whether the contents of the "known" samples should be admitted as full exhibits because they contained prejudicial information. There also was a dispute concerning the expert's use of a "known" exemplar containing the word "nigga," a word also found in the first note. See footnote 5 of this opinion. The court ruled initially that the contents of the "known" samples

would not be admitted as full exhibits but that the handwriting expert could testify regarding the exemplars, including the challenged exemplar.

During cross-examination of the handwriting expert, counsel for the defendant solicited testimony that the expert had been told that the "known" letters were written by the defendant; he had no personal knowledge of that fact. In response, the state sought to admit the entirety of the "known" samples as full exhibits to show, by their content, that the defendant had written them. Further colloquy outside of the jury's presence occurred. The court concluded that defense counsel's questioning appeared to invite the inference that the defendant was not the author of the "known" letters. After some discussion, including regarding how the "known" samples could be redacted, the defendant chose to stipulate that he authored the "known" letters. The "knowns" were not admitted as full exhibits.

On appeal, as he did at trial, the defendant argues that the admission of the notes seized from Perry's cell was unfairly prejudicial because an inflammatory word, "nigga," was used in one of the notes and, because that word also appeared in the samples of "known" writings, the handwriting expert used it as an exemplar from the "known" writings that were shown to the jury. The court, however, gave the jury a limiting instruction regarding the purpose of the proffered evidence and how to treat the presence of words that it might find inappropriate or offensive.[7] "The jury is presumed to

---

[7] The court's limiting instruction provided in relevant part: "[The notes found in Perry's cell, which were admitted as full exhibits, and the exemplars that were referenced in the PowerPoint presentation] constitute in part . . . the state's claim of consciousness of guilt. . . . [Y]ou may find [that these notes and exemplars] contain language or certain words [that] you may feel are inappropriate or offensive. The significance of the [notes], however, if you find [them] to be significant, relates to [their] use [as] evidence of consciousness of guilt and not the propriety of specific words. Therefore, while you may consider the note[s] as evidence of consciousness of guilt . . . provided, of course, you find the defendant to be the writer of the

have followed the court's instructions unless there is evidence to the contrary in the record." *State* v. *Bryant*, 106 Conn. App. 97, 106, 940 A.2d 858 (2008), appeal dismissed, 291 Conn. 777, 970 A.2d 80 (2009); cf. *State* v. *Davis*, supra, 98 Conn. App. 630 (limiting instruction minimized any unduly prejudicial impact of evidence of parole status); see also *State* v. *Skidd*, 104 Conn. App. 46, 68–69, 932 A.2d 416 (2007) (racial epithet used in state's closing argument did not unfairly prejudice defendant when word relevant to defendant's intent and used in reference to testimony of several trial witnesses).

None of the other prejudicial material that may have been contained in the "known" letters was ever shown to the jury. We conclude that, especially in light of the court's limiting instruction, the proffered evidence was not more prejudicial than it was probative of a relevant fact. Accordingly, the notes seized from Perry's cell, and, insofar as they are challenged, the exemplars of the defendant's "known" writing, properly were admitted.

## II

The defendant also claims that the admission of the notes found in Perry's cell and the circumstances under which he stipulated that he was the author of the "known" letters violated certain of his rights guaranteed by the United States constitution. Some of his arguments are intertwined with the relevancy issues already discussed. We conclude that these claims, insofar as they are distinct from the issue of whether the notes and samples of "known" writing were relevant, are not reviewable.

The defendant concedes that his claims of constitutional error were not preserved at trial and seeks review

note[s], you are not to consider in your deliberations the propriety of the language used by the writer of the note in deciding this case."

of his claims pursuant to the familiar four-pronged analysis set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] To prevail under *Golding*, the defendant must satisfy all four of the prongs. See footnote 8 of this opinion. If the defendant fails to satisfy either of the first two prongs, his claim is not reviewable. The second prong of *Golding* requires that the alleged trial court violation be truly of constitutional magnitude and not be simply a presentation on the admissibility of evidence. *State* v. *Burgos-Torres*, 114 Conn. App. 112, 116–17, 968 A.2d 476, cert. denied, 293 Conn. 908, 978 A.2d 1111 (2009). "The defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right." *State* v. *Stepney*, 94 Conn. App. 72, 79, 891 A.2d 67, cert. denied, 278 Conn. 911, 899 A.2d 40 (2006).

First, the defendant seeks *Golding* review of his claim that his constitutional right to a jury verdict under the sixth and fourteenth amendments to the constitution "was violated by the trial court's invitation to view his entire [claim of] self-defense, as stated in notes to Perry, as something that could provide a basis of guilt simply by his maintaining the defense." Other than the admission of the notes found in Perry's cell, which we have determined was proper, he does not cite record evidence to support his assertion that the court deprived

---

[8] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

the defendant of his "right to have criminal liability determined by a jury . . . ." We conclude that the defendant has attempted to attach a constitutional label to what is otherwise an evidentiary claim, and, thus, his claim is not reviewable pursuant to the second prong of *Golding*.

Second, the defendant seeks *Golding* review of his claim that he was deprived of his right to confront witnesses guaranteed by the sixth amendment to the constitution. Specifically, he claims he was deprived a " 'meaningful cross-examination into a legitimate area of inquiry' " as part of his cross-examination of Greg Kettering, the state's expert handwriting witness. A close reading of the defendant's argument, however, belies his claim that his constitutional rights were implicated: the defendant does *not* claim that the court unduly restricted his examination of the witness. Compare *State* v. *Brown*, 273 Conn. 330, 337–40, 869 A.2d 1224 (2005). Rather, his objection is to the fact that *after* his examination of Kettering, the court "offered the defendant a Hobson's choice between stipulating to the authenticity of the 'knowns' . . . or suffering their admission as a full exhibit" with redactions as discussed in part I B of this opinion. Because the defendant has not alleged an action by the court that implicates a fundamental right, this claim is not reviewable pursuant to the second prong of *Golding*.

Finally, the defendant seeks *Golding* review of his claim that the court violated his right to due process because it "lost sight of its proper role" and became "an advocate for the state's case." Again at issue is the admission of the notes found in Perry's cell. The gravamen of this claim is that the court violated the defendant's due process rights because it did not compel the state to accept the defendant's offer to stipulate to having authored the notes prior to the state's attempt

to put the notes into evidence.[9] The result of this claimed failure was that the state put prejudicial evidence before the jury as part of its effort to establish that the defendant had authored the notes—specifically, that the defendant was incarcerated and that the "known" samples contained inflammatory language.[10] Compare *State* v. *Cornelius*, 120 Conn. App. 177, 181–83, 990 A.2d 927 (reviewing pursuant to *Golding* defendant's claim that court's comment during jury charge implicated court's neutrality), cert. denied, 296 Conn. 910, 993 A.2d 467 (2010). Based on our thorough review of the record, we conclude that this claim is not reviewable pursuant to the second prong of *Golding*. Not even a strained connection can be found to exist between the claimed action, or inaction, by the court and the claimed violation of a fundamental constitutional right.

The judgment is affirmed.

In this opinion the other judges concurred.

[9] As discussed in part I B of this opinion, the defendant later stipulated to authoring the "knowns."

[10] The defendant acknowledges that the court issued a curative instruction regarding the claimed prejudicial evidence and does not challenge the efficacy of that instruction.