STATE OF CONNECTICUT *v.* ALBERTO VASQUEZ
(AC 30889)

DiPentima, C. J., and Gruendel and Bear, Js.

786

Argued November 8, 2011—officially released February 28, 2012

*Christine Perra Rapillo*, executive assistant public defender, for the appellant (defendant).

*Emily Graner Sexton*, special deputy assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellee (state).

### Opinion

BEAR, J. The defendant, Alberto Vasquez, appeals from the judgment of conviction, following a jury trial, of robbery in the third degree in violation of General Statutes § 53a-136 and conspiracy to commit robbery in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-136. The defendant claims that the trial court improperly (1) denied his motion for a

judgment of acquittal, (2) instructed the jury (a) by refusing to give his requested instruction regarding accomplice testimony, (b) with respect to his alibi defense, (c) regarding consciousness of guilt evidence and (d) by failing to provide a unanimity instruction, (3) denied his motion for a mistrial based on prosecutorial impropriety and (4) denied his motion to suppress his statement to the police. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. At some point prior to the early morning of October 17, 2006, the defendant devised a plan to rob the Mr. Sparkle carwash in the Rockville section of Vernon (carwash). The defendant enlisted the help of his friend, Jose Bultron, and his brother, Angelo Vasquez, to execute his plan. Bultron was familiar with the layout of the carwash and its employees, having worked previously at another Mr. Sparkle facility.

On the morning of October 17, 2006, Bultron and Angelo Vasquez entered the carwash office while the defendant waited in his vehicle on an adjacent street, outside of view. Once inside, Bultron grabbed the sole carwash employee on duty at the time, Gregory Havens, and placed him under guard in a bathroom. Bultron warned Havens that if he moved or tried anything, Bultron's "boy" would shoot. After taking money from the register, Bultron and Angelo Vasquez left the carwash. Outside, they entered the defendant's waiting vehicle and, with the defendant driving, fled the area.

The defendant became a suspect during the subsequent police investigation. On March 28, 2007, the police approached Bultron's former girlfriend, Eileen Vasquez, and asked her to contact the defendant.[1] The police

---

[1] According to her trial testimony, Eileen Vasquez is not related to the defendant.

recorded her telephone conversation with the defendant, during which he admitted to having planned the carwash robbery and referred to the crime as "motherfuckin' armed robbery."

Approximately six months after the robbery, on April 11, 2007, the police executed a warrant for the defendant's arrest at his Hartford home. The police posted officers at the front and back of the home and entered it after speaking with a female occupant. A subsequent search of the home uncovered the defendant hiding in a bedroom closet. The defendant thereafter was transported to the Vernon police station for questioning. After initially denying participation in the robbery, the defendant conceded his involvement in "the Rockville stick up" as a getaway driver.

The defendant was charged in a three count substitute information with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), robbery in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-134 (a) (4) and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4). On October 14, 2008, after the close of the state's evidence, the defendant moved for a judgment of acquittal, arguing that the state had failed to prove his requisite mental state for the crimes charged. The court denied the motion.

The jury subsequently returned a verdict finding the defendant guilty of the lesser included offenses of robbery in the third degree and conspiracy to commit robbery in the third degree, and the court rendered judgment accordingly. On February 19, 2009, the defendant was sentenced to a total effective term of ten years incarceration, execution suspended after eight years and nine months, followed by three years of probation.

This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal. Specifically, the defendant argues that the state failed to prove that he used or agreed to use a weapon in the commission of the robbery, which was an essential element of each of the crimes for which he had been charged. Because we determine that the defendant was not aggrieved by the court's denial of his motion, we decline to review this claim.

"[P]roof of aggrievement is . . . an essential prerequisite to the court's jurisdiction of the subject matter of the appeal. . . . Ordinarily, a party that prevails in the trial court is not aggrieved." (Internal quotation marks omitted.) *State* v. *Sanders*, 86 Conn. App. 757, 763–64, 862 A.2d 857 (2005). "The test of aggrievement is whether a party claiming aggrievement can demonstrate a specific personal and legal interest in the subject matter of the court's decision and whether that interest has been specially and injuriously affected by the decision." *State* v. *Talton*, 209 Conn. 133, 137, 547 A.2d 543 (1988).

In claiming that the court improperly denied his motion for a judgment of acquittal on the charges of robbery in the first degree, robbery in the first degree as an accessory and conspiracy to commit robbery in the first degree, the defendant contends that "the state presented no evidence . . . to support a finding that the use of a weapon in the course of the robbery was part of the agreement between [the defendant] and . . . Bultron . . . ." The defendant, however, was not convicted of any of those offenses but, ultimately, was convicted of the lesser included offenses of robbery in the third degree and conspiracy to commit robbery

in the third degree. Neither of those lesser included offenses requires evidence of an agreement to use a weapon. The defendant does not contest the sufficiency of the evidence supporting the lesser included offenses of which he was convicted. Instead, he predicates his claim solely on the issue of lack of evidence of an agreement to use a weapon.[2] Accordingly, we decline to review the defendant's claim because his appeal challenges the sufficiency of the evidence as to offenses for which he ultimately was acquitted.[3] See *State* v. *D'Haity*, 99 Conn. App. 375, 391, 914 A.2d 570, cert. denied, 282 Conn. 912, 924 A.2d 137 (2007); see also *State* v. *Hampton*, 293 Conn. 435, 444 n.7, 988 A.2d 167 (2009); *State* v. *Sweeney*, 104 Conn. App. 582, 591 n.4, 935 A.2d 178 (2007).

---

[2] Moreover, we disagree with the defendant's argument that he was deprived of his due process right to notice of the specific charges against him when he was convicted of lesser included offenses that were not specifically charged in the state's information at the time the court denied his motion for a judgment of acquittal. We note that "notice of the crime charged includes notice of all lesser included offenses." (Internal quotation marks omitted.) *State* v. *Chance,* 236 Conn. 31, 56, 671 A.2d 323 (1996). We also note that even if the court rendered judgments of acquittal as to the principal offenses charged, such judgments would not necessarily apply to the lesser included offenses. See Practice Book § 42-40.

[3] Furthermore, even if we were to reach the issue of the sufficiency of the evidence, we would determine that the court did not err in denying the motion for a judgment of acquittal. We note that § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays *or threatens the use of what he represents by his words or conduct* to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." (Emphasis added.) Here, both Bultron and Havens testified that Bultron cautioned Havens, after placing him in the carwash bathroom, that if he moved, Bultron's "boy" would shoot. Were we to reach the issue, it is clear from the record that the testimony of Bultron and Havens, coupled with the defendant's statement to Eileen Vasquez that he masterminded a crime which he described subsequently as an "armed robbery," provides sufficient evidence from which the jury could reasonably infer that the defendant agreed to the use or threatened the use of a weapon in the commission of the robbery.

## II

The defendant next claims that the court improperly instructed the jury. Specifically, he contends that the court erred in (1) refusing to give the jury his requested instruction regarding accomplice testimony, (2) instructing the jury on his alibi defense, (3) instructing the jury regarding consciousness of guilt evidence and (4) failing to provide a unanimity instruction. In addition, the defendant claims that the cumulative effect of the court's erroneous instructions deprived him of a fair trial. We disagree with the defendant and will address his claims in turn.

As a preliminary matter, we set forth the standard of review applicable to our analysis of jury instructions. "The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Flores*, 301 Conn. 77, 93, 17 A.3d 1025 (2011).

A

First, the defendant claims that the court improperly failed to provide the jury his requested instruction on accomplice testimony. The defendant contends that he was entitled to have the jury instructed specifically that it could consider Bultron's possible interest in obtaining a benefit from the state in exchange for his testimony. The defendant argues that by "failing to instruct on the accomplice's motive to lie, the court violated the defendant's right to due process and a fair trial." We are not persuaded.

The following additional facts are relevant to the defendant's claim. At trial, Bultron provided testimony implicating the defendant in the robbery, including testimony that the defendant was involved in planning the crime and had driven the getaway car. The defendant requested subsequently that the court instruct the jury that Bultron had been sentenced to a long prison term and, accordingly, may have been motivated to lie to curry favor with the prosecutor and to receive a sentence modification.[4] At the charging conference, the court concluded that a specific instruction highlighting Bultron's alleged interest in a sentence modification would not be warranted under the evidence presented, where Bultron was "a sentenced prisoner with no offers from the state."

In its charge to the jury on the issue of accomplice testimony, the court stated: "[Y]ou heard testimony from a witness who, by his own testimony, participated in the criminal conduct charged in this case. Such a

---

[4] The defendant argues that there was evidence that Bultron was looking for a sentence modification in return for his testimony and that the jury should have been instructed on his "possible interest" in obtaining a benefit from the state. Nonetheless, the defendant concedes that as of the date of trial, Bultron had not filed an actual request for a sentence modification nor was there any evidence that the state had offered or entered into a deal with him.

witness is known in the law as an accomplice. In this case the accomplice is . . . Bultron. In weighing the testimony of an accomplice who is a self-confessed criminal you should consider that fact.

"It may be that you would not believe a person who has committed a crime as readily as you would believe a person of good character. The amount of moral wrong involved in the participation of the witness in the crime should be weighed.

"Therefore, you must look with particular care at the testimony of an accomplice and scrutinize it very carefully before you accept it. There are many offenses that are of such a character that the only persons capable of giving useful testimony are those who are themselves implicated in the crime. It is for you to decide what credibility you will give to a witness who has admitted his involvement in criminal wrongdoing.

"Whether you will believe or disbelieve the testimony of a person who by his own admission has committed or contributed to the crime charged by the state. Like all other questions of credibility this is a question you must decide based on all the evidence presented to you."

Additionally, the court provided the following instruction regarding the credibility of witnesses generally: "In deciding what the facts are you must consider all of the evidence. In doing this you must decide which testimony to believe and which testimony not to believe. You may believe all, none or any part of any witnesses testimony.

"In making that decision you may take into account a number of factors including . . . did the witness have any personal, financial, professional or other interest in the outcome of this case or any bias or prejudice

concerning any party or any matter involved in this case."

"Generally, a [criminal] defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . This court has held, however, that a special credibility instruction is required for three types of witnesses, namely, complaining witnesses, accomplices and jailhouse informants." (Citation omitted; internal quotation marks omitted.) *State* v. *Diaz*, 302 Conn. 93, 101–102, 25 A.3d 594 (2011). "With regard to accomplice witnesses, we have stated that, [w]here it is warranted by the evidence, it is the court's duty to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if [he] assisted or aided or abetted in the commission, of the offense with which the defendant is charged. . . . [I]n order for one to be an accomplice there must be mutuality of intent and community of unlawful purpose. . . .

"With respect to the credibility of accomplices, we have observed that the inherent unreliability of accomplice testimony ordinarily requires a particular caution to the jury [because] . . . [t]he conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the [court] to specially caution the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 468, 886 A.2d 777 (2005). An accomplice's possible interest in favorable treatment previously has been held to constitute a condition of character and interest justifying an accomplice witness charge. See *State* v. *Brown*, 187 Conn. 602, 613, 447 A.2d 734 (1982); *State* v. *Ruth*, 181 Conn. 187, 195–96, 435 A.2d 3 (1980).

This is not a case where the court failed to provide *any* instruction specifically cautioning the jury regarding an accomplice's motives or interests. Compare *State v. Santiago*, 103 Conn. App. 406, 417, 931 A.2d 298 (trial court's failure to give accomplice instruction harmless under plain error analysis), cert. denied, 284 Conn. 937, 937 A.2d 695 (2007). With respect to the defendant's claim of Bultron's alleged interest in favorable treatment as a result of his testimony, we note that, as of the date of the trial, there was no evidence that the state had provided or offered to provide him with any cooperation or recommendation concerning a sentence modification or that any motion for a sentence modification had been filed. Moreover, in declining to provide the defendant's specific requested charge, the court noted that Bultron already had been sentenced for his involvement in the robbery. Additionally, defense counsel questioned Bultron extensively regarding his potential interest in favorable state treatment during cross-examination.

Reviewing the charge as a whole, we conclude that the jury was cautioned adequately regarding the possible unreliability of Bultron's testimony. The court explained to the jury that it must look at Bultron's testimony "with particular care" and "scrutinize it very carefully." In addition, the court noted that the jury should consider the fact that Bultron is a self-confessed criminal when weighing his testimony. Furthermore, the court admonished the jury that it should consider possible personal interests of witnesses generally in weighing their testimony.

"The fact that the charge did not follow precisely that requested by the defendant does not constitute error where the point is covered fairly in the charge." *State v. Estep*, 186 Conn. 648, 653, 443 A.2d 483 (1982). Here, the court described Bultron as an accomplice and "self-confessed criminal," and it expressly cautioned

the jury, inter alia, to "look with particular care at the testimony of an accomplice and scrutinize it very carefully before you accept it." Additionally, the court instructed the jury that in making its decision to decide which testimony to believe and which testimony not to believe the jury could "take into account a number of factors including . . . did the witness have any personal, financial, professional or other interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in this case." Accordingly, we conclude that the court did not err in failing to provide the specific instruction requested by the defendant. Cf. *State* v. *Colon*, 272 Conn. 106, 227–28, 864 A.2d 666 (2004) (failure to give requested accomplice charge not improper where evidence was insufficient that witness was accessory and court gave general instruction highlighting witnesses' potential biases and motives), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

B

Second, the defendant claims that the court improperly instructed the jury as to the state's burden of proof regarding his alibi defense. In particular, the defendant contends that the trial court's characterization of alibi evidence as "rebuttal" evidence, coupled with its failure to instruct the jury that the state needed to disprove his alibi beyond a reasonable doubt, improperly diluted the burden of proof necessary for a conviction. We do not agree.

"[W]here an alibi is asserted and relied upon as a defense, the accused is entitled to have the jury instructed that the evidence offered by him upon that subject is to be considered by [it] in connection with all the rest, in determining whether he was present, and if a reasonable doubt upon that point exists, it is [its] duty to acquit." (Internal quotation marks omitted.)

*State* v. *Milardo*, 224 Conn. 397, 407, 618 A.2d 1347 (1993).

The court charged the jury on the issue of the defendant's alibi defense as follows: "[T]he defendant has presented evidence that he was at home on Alden Street in Hartford at the time of this offense. This is what is commonly known as an alibi defense. This is a rebuttal by the defendant of the state's attempt to prove that the defendant was present at the scene of the crime and committed or participated in the acts charged.

"It is up to the state to prove the defendant's guilt beyond a reasonable doubt which includes all of the elements of a crime including the defendant's presence at a stated place and the defendant's committing or participating in certain acts at that place at a given time. The alibi evidence that the evidence has—that the defendant has placed before you seeks to convince you that the defendant was elsewhere at the time and, therefore, could not possibly have committed the acts charged.

"Whether the defendant was or was not present at the scene of the crime and therefore could or could not have done what the defendant has been charged with doing is for you to decide considering all of the facts in the case. Remember the defendant does not have to prove his claim that he was elsewhere.

"It is sufficient if on considering all of the evidence there arises in your minds a reasonable doubt as to the defendant's presence at the scene of the crime when it was committed. If you have such a doubt then the defendant is entitled to be found not guilty."

"[T]he trial court was not required to instruct the jury explicitly that the state must disprove his alibi defense beyond a reasonable doubt." *State* v. *Milardo*, supra, 224 Conn. 407. Reviewing the charge as a whole,

we conclude that the instruction on the issue of the defendant's alibi defense was not improper. Specifically, the court noted that the state must "prove the defendant's guilt beyond a reasonable doubt . . . including the defendant's presence at a stated place . . . ." Moreover, the court instructed the jury that "the defendant does not have to prove his claim that he was elsewhere."

We do not parse individual elements of a jury charge in an attempt to manufacture error. *State* v. *Flores*, supra, 301 Conn. 93. Rather, we examine the charge as a whole to determine the practical effect the language had on the jury. The charge on the defendant's alibi defense was sufficiently correct in law, adequately guided the jury and was appropriately adapted to the issues of the present matter. Moreover, the court did not err in characterizing the defendant's alibi evidence as a "rebuttal" of the state's evidence. See *State* v. *Evans*, 205 Conn. 528, 537, 534 A.2d 1159 (1987) ("[a]libi evidence, although commonly called a defense, is merely a rebuttal of the state's evidence" [internal quotation marks omitted]), cert. denied, 485 U.S. 988, 108 S. Ct. 1292, 99 L. Ed. 2d 502 (1988).

C

Third, the defendant claims that the court improperly instructed the jury that it could consider certain evidence as consciousness of guilt. Specifically, he argues that the court should not have instructed the jury that it could consider his act of hiding in his daughter's closet when the police entered his home pursuant to an arrest warrant as evidence of flight and thus consciousness of guilt. Moreover, the defendant argues that the court improperly instructed the jury that it could consider his statements concerning his whereabouts on the day of the crime as evidence of consciousness of

guilt if it determined such statements were false. We disagree.

The police executed a warrant for the defendant's arrest in April, 2007, nearly six months after the commission of the robbery. After posting officers at the front and back of the defendant's Hartford home, the police knocked on the front door. An occupant of the home informed the police that the defendant was not present. A subsequent search of the home uncovered the defendant hiding in his daughter's bedroom closet.

With regard to his presence in his daughter's closet when the police executed a warrant for his arrest, the defendant argues that "the totality of the evidence does not support that the behavior displayed consciousness of guilt for the crimes charged." The defendant notes that the police executed the arrest warrant several months after the underlying crime and that "[t]here was no actual evidence that he was hiding [from the police] in the closet, just that he was removed from the closet by the police."

We review a trial court's decision to give a consciousness of guilt instruction under an abuse of discretion standard. *State* v. *Luther*, 114 Conn. App. 799, 817, 971 A.2d 781, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009). "Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, is ordinarily the basis for a [jury] charge on the inference of consciousness of guilt." (Internal quotation marks omitted.) *State* v. *Mack*, 129 Conn. App. 127, 134, 19 A.3d 689, cert. denied, 302 Conn. 908, 23 A.3d 1245 (2011).

Here, there was evidence from which a jury could infer that the defendant sought to evade capture by the police for his involvement in the carwash robbery. The defendant had been questioned by the police concerning the robbery on multiple occasions prior to his arrest.

Additionally, the defendant had spoken with Eileen Vasquez concerning his involvement in the robbery a few weeks before his arrest. In executing the arrest warrant at the defendant's home, the police posted officers at the front and rear of the home, knocked loudly on the front door and entered after speaking with a female occupant. A subsequent search of the home uncovered the defendant, who had been concealed in a closet in his daughter's bedroom.

Even if the defendant's presence in the closet at the time of the police search could be susceptible to an innocent explanation, we require only that there be relevant evidence to support a consciousness of guilt instruction. See *State* v. *Luther,* supra, 114 Conn. App. 818 ("[a]lthough the evidence might support an innocent explanation as well as an inference of guilt, the only requirement is that the evidence be relevant"). Moreover, an ambiguity regarding the defendant's motive—i.e., the possibility that he was hiding from the police for a reason unassociated with the carwash robbery—does not invalidate the court's action in this case. See *State* v. *Middlebrook,* 51 Conn. App. 711, 720–21, 725 A.2d 351 (once evidence sufficient to infer consciousness of guilt admitted, jury left to consider any ambiguity), cert. denied, 248 Conn. 910, 731 A.2d 310 (1999). Because the evidence that the defendant concealed himself from the police was relevant to a jury instruction concerning consciousness of guilt, we conclude that the issuance of such instruction was not an abuse of discretion. See *State* v. *Williams,* 27 Conn. App. 654, 664, 610 A.2d 672 (upholding jury charge and noting that "[c]oncealment, when unexplained, may tend to prove a consciousness of guilt"), cert. denied, 223 Conn. 914, 614 A.2d 829 (1992).

With regard to the defendant's statements concerning his whereabouts on the day of the crime, the record indicates that the defendant had informed the police

on three occasions—October 19 and November 16, 2006, and April 11, 2007—that he was not present at the carwash at the time of the robbery but, rather, that he was at his home in Hartford. The defendant argues that his presence at the carwash at the time of the robbery was the critical issue in the present matter. Thus, the defendant contends, instructing the jury that it could consider inconsistencies in his testimony was highly prejudicial.

The court's consciousness of guilt instruction as applicable to alleged false statements provided: "[A] person's false statement as to his whereabouts at the time of the offense when unexplained may indicate consciousness of guilt if the facts and circumstances support it. . . . If you find the evidence proves such acts and you also find that the acts were influenced by the criminal act and not by any other reason, you may, but are not required, to infer from the evidence the defendant was acting from a guilty conscience."

"Evidence that an accused had made false statements tending to exculpate him from involvement in the crimes charged has commonly been deemed to support a jury charge on consciousness of guilt." (Internal quotation marks omitted.) *State* v. *Hinds*, 86 Conn. App. 557, 565, 861 A.2d 1219 (2004), cert. denied, 273 Conn. 915, 871 A.2d 372 (2005). "The trial court, however, should admit only that evidence where its probative value outweighs its prejudicial effect. . . . In seeking to introduce evidence of a defendant's consciousness of guilt, [i]t is relevant to show the conduct of an accused . . . as well as any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act." (Internal quotation marks omitted.) *State* v. *Riser*, 70 Conn. App. 543, 548, 800 A.2d 564 (2002).

Here, there is evidence in the record that, in response to police questioning on three separate occasions, the

defendant denied involvement in the robbery and indicated that he was at home in Hartford at the time of the incident. Such statements clearly are exculpatory and, moreover, reasonably can be inferred to have been influenced by the criminal acts at issue in the present matter. Because the defendant's presence at the carwash was an important component of the state's case, the probative value of the statements outweighed their prejudicial effect. Accordingly, we cannot conclude that the court abused its discretion in providing the instruction.

## D

In framing his final claim of instructional error, the defendant states in his main brief that the "trial court should have given an instruction that [the] jury needed to be unanimous on whether [the] defendant was guilty as a principal under the *Pinkerton* doctrine of accessory liability or as a coconspirator." In his reply brief, however, the defendant claims that the "trial court should have given a more specific instruction that the jury needed to return a unanimous verdict on whether the defendant was guilty as a principal or a coconspirator."

The following additional facts aid in clarifying the defendant's claim. The defendant filed a request to charge seeking, in part, a specific unanimity charge.[5] The defendant cited the case of *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977), in support of his proposed unanimity instruction.

The court's initial jury charge included specific instructions on the first three counts of the information, which charged robbery in the first degree, robbery in the

---

[5] The requested instruction provided in relevant part: "Either he is guilty of count one and not guilty of count two or he is guilty of count two and not count one, or he is not guilty of either charge. . . . A valid verdict on either count cannot be had if half of you believe him guilty of count one and half of count two."

first degree as an accessory and conspiracy to commit robbery in the first degree, respectively. The jury was also instructed as to lesser included offenses and the court provided an instruction on the application of the *Pinkerton* doctrine.[6] The defendant objected to the court's charge. Later, during deliberation, the jury conveyed a question to the court, which the court characterized as saying "if we found in the first count robbery in the third degree can there be accessory or conspiracy in the first degree? Does that same degree follow for the remaining counts?"

In response to the jury inquiry, the court merged the first and second counts of the information, charging robbery in the first degree and robbery in the first degree as an accessory, and provided counsel for both parties with a proposed supplemental jury instruction. The defendant objected to both the merger of the counts and to the court's proposed instruction on the ground that it failed to properly instruct on "unanimity as to whether it is an accessory or principal based upon that . . . original request I made [at the initial charging conference] based on the old case of [*United States* v. *Gipson,* supra, 553 F.2d 453] . . . ." The court then instructed the jury as follows: "In determining whether the defendant is guilty or not guilty of robbery in the first degree you may not mix and match the defendant's culpability, if any, as a participant or an accessory on the one hand and culpability under the *Pinkerton* doctrine on the other hand. You can't have some of you

---

[6] See *Pinkerton* v. *United States,* 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). "Pursuant to the *Pinkerton* doctrine of vicarious liability, articulated by the United States Supreme Court in *Pinkerton* . . . and expressly adopted by our Supreme Court in *State* v. *Walton,* 227 Conn. 32, 630 A.2d 990 (1993), a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." (Internal quotation marks omitted.) *State* v. *LaFountain,* 127 Conn. App. 819, 827, 16 A.3d 761, cert. denied, 301 Conn. 921, 22 A.3d 1281 (2011).

finding one as an accessory or principal and becoming unanimous by others finding under *Pinkerton*.

"In other words, to arrive at a guilty—a verdict of guilty of robbery in the first degree, you must all be unanimous that the defendant was a participant in or accessory to that crime or, alternatively, you must all be unanimous that he is guilty of the crime under the *Pinkerton* doctrine, but you can't mix and match those two to achieve unanimity."[7]

The defendant argues that application of the *Pinkerton* doctrine involves the resolution of complex legal issues that are likely to confuse a jury. He contends that "[c]learly the jurors in this case were confused, as they came back with a question about whether they could find a defendant guilty of a different 'level' of offense for the principal/accessory and conspiracy charges. The court's response, which indicated that they needed to be unanimous on the conspiracy charge but not as to principal versus accessory [was] highly confusing and likely to lead the jury to believe that they [did] not need to return a unanimous verdict."

We note that the defendant conceded during oral argument before this court that he is not arguing that unanimity was required as between principal and accessorial liability. Thus, we construe the defendant's claim as stating that the court's instruction to the jury insufficiently conveyed that it needed to be unanimous as to whether the defendant was guilty of robbery as a participant, either as a principal or as an accessory, or guilty under the *Pinkerton* doctrine.

"A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written

[7] With respect to the merged counts, the court instructed the jury that it did "not have to be unanimous on whether the defendant was a participant or an accessory so long as you find the elements of the crime of robbery in the first degree proved beyond a reasonable doubt including the defendant's role as a participant or as an accessory as I have explained them."

request to charge or by taking an exception to the charge as given." *Pestey* v. *Cushman*, 259 Conn. 345, 372–73, 788 A.2d 496 (2002). The defendant objected at trial to both the merger of the counts and the court's proposed postmerger instruction on the ground that such instruction failed to provide for a unanimity charge as between principal and accessory liability. We note that the defendant does not challenge the merger of the counts on appeal. Rather, he now seeks to attack the court's jury instruction on the ground that it failed to provide a unanimity charge as between liability as a principal or accessory, on the one hand, and liability under *Pinkerton*, on the other. Because, on appeal, the defendant attacks the court's instruction on a ground different from that advanced at trial, we decline to review his claim.[8] *State* v. *Boyd*, 295 Conn. 707, 758, 992 A.2d 1071 (2010) ("[t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]), cert. denied, 562 U.S. 1224, 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011).

III

The defendant further claims that the court improperly refused to grant his motion for a mistrial based on the prosecutor's improper comments during closing argument. The defendant argues that comments made by the prosecutor resulted in a denial of his right to due process. Specifically, the defendant contends that

---

[8] We note that the state failed to object to this claim on preservation grounds. Nonetheless, even if we were to reach the merits of this claim, we would find it unavailing. Our review of the record reveals that the court's instruction never sanctioned expressly a nonunanimous verdict as between liability as a participant, either as a principal or accessory, and liability under *Pinkerton*. See *State* v. *Martinez*, 278 Conn. 598, 610, 900 A.2d 485 (2006) (threshold inquiry is whether "the trial court included in its instructions language 'expressly sanctioning' a nonunanimous verdict").

the prosecutor's comments when discussing lesser included offense instructions "indicated to the jury that the defense had conceded guilt."[9] We disagree only as to the denial of his right to due process.

As a preliminary matter, we note that the state does not dispute the impropriety of the prosecutor's comment. Therefore, we will restrict our review to whether the denial of the motion for a mistrial, in light of the concededly improper statement, constituted a due process violation.

"[T]he touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out . . . in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)." (Internal quotation marks omitted.) *State* v. *Pascal*, 109 Conn. App. 55, 66, 950 A.2d 566, cert. denied, 289 Conn. 917, 957 A.2d 880 (2008). The *Williams* factors include "the extent to which the impropriety was invited by defense conduct, the severity of the impropriety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the effectiveness of the curative measures adopted and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Carbone*, 116 Conn. App. 801, 811, 977 A.2d 694, cert. denied, 294 Conn. 904, 982 A.2d 647 (2009).

---

[9] Specifically, the prosecutor stated during closing argument: "One of the things [the judge is] going to talk about is called lesser included offenses. Now, the defendant wants you to hear about these things and, quite frankly, so does the state. These are normal things that come during trials, but they only come into play if you find the defendant not guilty of a particular charge. They can only be considered by you, in fact, if you find the defendant not guilty of the charges as they stand. If you find him not guilty, then you consider these lesser included offenses. If you find him guilty as charged, you don't even need to look at them. As I mentioned both the state and the defense want you to consider these things. From the defendant's point of view, I would imagine that he wants you to know about these things so maybe you won't convict him of the charges . . . ."

Here, it is apparent from the record that the improper comment was not invited by defense conduct. The prosecutor's impropriety was confined to approximately eight sentences during closing argument. The state's case was supported by substantial evidence, including testimony of an accomplice witness implicating the defendant in the robbery, the defendant's telephone conversation with Eileen Vasquez wherein he admitted having planned the robbery and the defendant's own statement to the police wherein he admitted his participation in the robbery as a getaway driver.

Although the prosecutor's comments touched tangentially on the defendant's culpability, the impropriety was not central to the critical issues in the case, namely, the defendant's presence at the carwash and intent to participate in the robbery. Finally, the court issued a curative instruction, cautioning the jury that the state "can't speak for what the defense wants or what the defense expects. The comments that counsel is making, speak only for the state. [The defendant's counsel] will speak for the defendant." In light of our consideration of the *Williams* factors, we determine that the impropriety did not deprive the defendant of a fair trial. Accordingly, the court did not err in denying the motion for a mistrial.

## IV

The defendant's final claim on appeal is that the court improperly denied his motion to suppress his statement to the police.[10] Specifically, the defendant contends that his statement to the police must be suppressed on two

---

[10] We note that the prepared record does not contain a written memorandum of decision or signed transcript setting forth the court's reasons for denying the motion to suppress. See Practice Book § 64-1 (a) (4). Although we frequently have declined to review claims on appeal due to an appellant's failure to provide an adequate record for review, we will review the present claim on the basis of the unsigned transcript filed in this matter. See *In re Diamond J.*, 121 Conn. App. 392, 398–99, 996 A.2d 296, cert. denied, 297 Conn. 927, 998 A.2d 1193 (2010).

grounds: (1) it was given involuntarily, as a result of police coercion and (2) it was taken absent a clear waiver of the defendant's right to counsel.[11] We are not persuaded.

Our review of a court's denial of a motion to suppress involves a two part function. *State* v. *DiMeco*, 128 Conn. App. 198, 202, 15 A.3d 1204, cert. denied, 301 Conn. 928, 22 A.3d 1275, cert. denied,     U.S.    , 132 S. Ct. 559, 181 L. Ed. 2d 398 (2011). Challenges to the court's factual determinations are reviewed under a clearly erroneous standard. Id., 202–203. Where the court's legal determinations are challenged, our review is plenary, and we seek to determine whether, in light of its findings of fact, the court's conclusions are legally and logically correct. Id., 203.

## A

The following additional facts, drawn from the court's findings at the suppression hearing, are relevant to the defendant's claim that his statement was the product of police coercion. After his arrest on April 11, 2007, at approximately 9:30 a.m., the defendant was transported to the Vernon police department and placed in a holding cell. The defendant was not interrogated during this time, and the entire process of transporting and processing the defendant took approximately two hours. The court further determined that the interrogation process took approximately three hours, lasting from 11:30 a.m. until 2:30 p.m. Although the defendant initially denied involvement in the robbery, the police recited certain evidence they had implicating the defendant's brother in the crime in further support of their

[11] In his brief, the defendant concedes that there "was no real dispute at trial over whether [the defendant] was in custody or whether the taking of the statement amounted to an interrogation." Accordingly, we restrict our analysis to the specific claims of whether the statement was given voluntarily and whether the defendant knowingly waived his right to counsel.

arrest of the defendant. The defendant eventually provided a statement to the police admitting his participation in the robbery.

Our review of the voluntariness of the defendant's statement is plenary. See *State* v. *Garcia*, 299 Conn. 39, 51, 7 A.3d 355 (2010). Subordinate factual determinations regarding the circumstances surrounding the statement are subject to deference and will not be overturned unless clearly erroneous. See id.

Here, the defendant contends that, under the totality of the circumstances, his confession was not voluntary and was the subject of police coercion. The defendant argues that, although the court found that the three hour period of questioning was not unreasonable, the court failed to take into consideration prior repeated questioning by the police and his continued denial of involvement in the robbery. The defendant contends that the only plausible explanation for the conduct of the police, including their statements concerning his brother's involvement in the robbery, was to break down his will and coerce a confession.

"[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . . The ultimate test remains . . . [i]s the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. . . . The determination, by the trial court, [of] whether a confession is voluntary must be grounded [on] a consideration of the circumstances surrounding it. . . .

"Factors that may be taken into account [to assess voluntariness], upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Internal quotation marks omitted.) Id., 51–52.

Our review of the record supports the court's determination. The court found the approximately three hour interrogation period reasonable and that there was "nothing which would suggest an overbearing of anybody's will" with respect to the approximately two hours wherein the defendant was placed in a holding cell. Additionally, the court noted that there was no evidence that the defendant had been intoxicated or deprived of food or sleep. Finally, with respect to the police statements concerning the defendant's brother, the court found that the use of such information was not "intended in any way to overbear the defendant's will. It's just a statement of fact that they did have evidence against the brother."

The court's factual findings are supported by the record and are not clearly erroneous. On the basis of the facts as found by the court, the court did not err in concluding that, under the totality of the circumstances, the defendant's statement was not the result of improper coercion.

B

With regard to the defendant's alleged invocation of his right to counsel, we engage in a searching review of the record to determine whether the court's finding that there had been a knowing and voluntary waiver was supported by substantial evidence. See *State* v. *Wallace*, 290 Conn. 261, 267, 962 A.2d 781 (2009).

The defendant argues that he requested a lawyer as soon as the police began questioning him on the day he was arrested. The defendant contends that his trial testimony "conflict[ed] with Detective [John DiVenere's] statements that the police had him sign not one but two waiver forms before they began to question him."

"In evaluating whether the state has met its burden of proving that the defendant knowingly and voluntarily waived his rights . . . we must defer to the trial court's resolution of questions of credibility." (Internal quotation marks omitted.) *State* v. *Foreman*, 288 Conn. 684, 700–701, 954 A.2d 135 (2008). It is clear that the court credited DiVenere's account of the waiver procedure, which it referred to as a "by the book approach." Moreover, there was evidence in the record that the defendant signed not one, but two, waiver forms, and the court was free to credit that evidence. Accordingly, we conclude that the court's finding that the defendant knowingly and voluntarily waived his right to counsel was supported by substantial evidence.

The judgment is affirmed.

In this opinion the other judges concurred.